.exis
Case: 1:14-cv-02165 Document #: 28 Filed: 07/22/14 Page 1 of 8 PageID #:102
earch | Get a Document | Shepard's® | More | History | Alert

)CUS™ Terms | Search Within | Original Results (1 - 57) | Advanced... | View Tutoria
Source: **Legal > Federal Legal - U.S. > Find Cases > US Courts of Appeals Cases, Combined** [i]
Terms: **joinder not allowed on unrelated cases in electronic infringement of copyright for illegally downloaded movies** (Suggest Terms for My Search | Feedback on Your Search)

✓Select for FOCUS™ or Delivery

*2014 U.S. App. LEXIS 9690, \*; 110 U.S.P.Q.2D (BNA) 1838, \*\**

AF HOLDINGS, LLC, APPELLEE v. DOES 1 - 1058, APPELLEES. COX COMMUNICATIONS, INC., ET AL., APPELLANTS

No. 12-7135

UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

2014 U.S. App. LEXIS 9690; 110 U.S.P.Q.2D (BNA) 1838

April 14, 2014, Argued
May 27, 2014, Decided

**PRIOR HISTORY:** [\*1]
Appeal from the United States District Court for the District of Columbia. (No. 1:12-cv-00048).
AF Holdings LLC v. Does, 286 F.R.D. 39, 2012 U.S. Dist. LEXIS 109405 (D.D.C., 2012)

**CASE SUMMARY**

**OVERVIEW:** HOLDINGS: [1]-In light of D.C. Code § 13-423(a)(3), plaintiff could not possibly have had a good faith belief that it could successfully sue the overwhelming majority of the 1,058 John Doe defendants in the district; [2]-Under 28 U.S.C.S. § 1400(a), plaintiff's refusal to cabin its suit and corresponding discovery requests to individuals whom it had some realistic chance of successfully suing in the district demonstrated that it had not sought the information regarding defendants' Internet Protocol (IP) addresses because of its relevance to the issues that might actually be litigated in the case as required by Fed. R. Civ. P. 26(b)(1); [3]-The mere fact that two defendants accessed the same file through the same file-sharing protocol provided an insufficient basis for **joinder.**

**OUTCOME:** Vacated and remanded.

**CORE TERMS:** discovery, personal jurisdiction, subscriber, user, providers, Prenda Law's, download, subpoena, joinder, venue, lawsuit, good faith belief, downloaded, series of transactions, oral argument, protocol, swarm, discovery requests, subject matter, copyrighted, occurrence, unknown, joined, http, discovery procedures, pornographic film, pornographic, geolocation, initiated, assigned

**LEXISNEXIS® HEADNOTES**                                              ⊟ **Hide**
Civil Procedure > Discovery > General Overview

Civil Procedure > Pretrial Matters > Subpoenas

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

HN1 ↓ Review of an order allowing service of discovery subpoenas is for abuse of discretion. As a district court by definition abuses its discretion when it makes an error of law, the abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal

Civil Procedure > Judicial Officers > Judges > Discretion

Civil Procedure > Discovery > General Overview

Civil Procedure > Discovery > Relevance

Civil Procedure > Pretrial Matters > Subpoenas

**HN2** Where a plaintiff seeks not just to file a complaint, but instead attempts to use the machinery of the courts to force a party to comply with its discovery demands, Fed. R. Civ. P. 45 and 26 set forth the relevant considerations. Rule 45(d)(3)(A) requires a district court to quash or modify a subpoena that subjects a person to undue burden. If a subpoena compels disclosure of information that is not properly discoverable, then the burden it imposes, however slight, is necessarily undue: why require a party to produce information the requesting party has no right to obtain? The question then becomes what sort of information is properly discoverable. Where no party has yet been specifically named as a defendant, the only potential avenue for discovery is Fed. R. Civ. P. 26(d)(1), which provides for discovery by court order. A district court's discretion to order discovery in these circumstances is, in turn, cabined by Rule 26(b)(1)'s general requirements that a discovery order be for good cause and relate to a matter relevant to the subject matter involved in the action. More Like This Headnote

Civil Procedure > Discovery > General Overview

**HN3** When the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview 

Civil Procedure > Discovery > Relevance

**HN4** As is the case when a plaintiff seeks jurisdictional discovery with respect to named defendants, a plaintiff pursuing discovery regarding unknown defendants must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendants. Absent such a threshold showing, there is little reason to believe that the information sought will be relevant to the subject matter involved in the action, as Fed. R. Civ. P. 26(b)(1) requires. The identity of prospective defendants who cannot properly be sued in a district can be of little use in a lawsuit brought in that district. And when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied. Thus, in denying discovery where there is no such good faith belief, a court would not be making an impermissible conclusive determination on the merits of the personal jurisdiction question. Instead, the court would be satisfying its Rule 26 obligation to ensure that the scope of discovery is limited to issues actually relevant to the litigation. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview

Civil Procedure > Venue > General Overview

**HN5** Under 28 U.S.C.S. § 1400(a), the propriety of venue turns on whether the defendant is subject to personal jurisdiction. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Parties > Joinder > Permissive Joinder

**HN6** Fed. R. Civ. P. 20(a)(2) sets forth that multiple defendants may be joined in one action if the plaintiff seeks relief with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and any question of law or fact common to all defendants will arise in the action. More Like This Headnote

Civil Procedure > Discovery > Relevance

**HN7** Information about individuals who could not be joined in an action cannot possibly be relevant to the subject matter involved in the action. Fed. R. Civ. P. 26(b)(1). More Like This Headnote

Civil Procedure > Parties > Joinder > Permissive Joinder

the mere fact that two defendants accessed the same file through the same file sharing protocol provides an insufficient basis for **joinder**. More Like This Headnote

Case: 1:14-cv-02165 Document #: 28 Filed: 07/22/14 Page 3 of 8 PageID #:104

**COUNSEL:** Benjamin J. Fox argued the cause for appellants. With him on the briefs were Deanne E. Maynard, Bart W. Huffman, Hugh S. Balsam, John D. Seiver, Ronald G. London, Leslie G. Moylan, and Lisa B. Zycherman. Marc A. Hearron entered an appearance.

Corynne McSherry argued the cause for amici curiae **Electronic** Frontier Foundation, et al. in support of appellants. On the brief were Mitchell L. Stoltz, Arthur B. Spitzer, Catherine Crump, and Paul Alan Levy.

Paul A. Duffy argued the cause and filed the brief for appellee AF Holdings, LLC.

**JUDGES:** Before: TATEL, Circuit Judge, and SILBERMAN ▾ and SENTELLE ▾, Senior Circuit Judges. Opinion for the Court filed by Circuit Judge TATEL.

**OPINION BY:** TATEL

**OPINION**

[**1839] TATEL, *Circuit Judge*: Generally speaking, our federal judicial system and the procedural rules that govern it work well, allowing parties to resolve their disputes with one another fairly and efficiently. [**1840] But sometimes individuals seek to manipulate judicial procedures to serve their own improper ends. This case calls upon us to evaluate—and put a stop to—one litigant's attempt to do just that.

I.

Appellee AF Holdings, a limited liability [*2] company formed in the Caribbean islands of Saint Kitts and Nevis, sued and then sought discovery regarding more than a thousand unknown individuals who it claimed had **illegally** shared a copyrighted pornographic film. This interlocutory appeal arises from a district court order granting AF Holdings's discovery requests.

A full understanding of this case requires knowing some things about the lawyer and "law firm" that initiated it. AF Holdings is attorney Paul A. Duffy. Until very recently, Duffy was associated with "Prenda Law," an organization that, since representing AF Holdings in the district court, appears to have disbanded and then reconstituted itself in a similar form. *See* Ben Jones, *Prenda Suffers More Fee Award Blows*, TorrentFreak (August 9, 2013), http://torrentfreak.com/prenda-suffers-more-fee-award-blows-130809.

Prenda Law, as Judge Otis Wright II put it in a case similar to this, was a "porno-trolling collective." *Ingenuity 13 LLC v. John Doe*, No. 2:12-cv-8333, 2013 U.S. Dist. LEXIS 64564, at *3 (C.D. Cal. May 6, 2013). According to Judge Wright, Duffy and the other principals of Prenda Law were "attorneys with shattered law practices" who, "[s]eeking easy money, . . . [*3] formed . . . AF Holdings," acquired "several **copyrights** to pornographic **movies**," then initiated massive "John Doe" **copyright infringement** lawsuits. 2013 U.S. Dist. LEXIS 64564, at *5-6. These suits took advantage of judicial discovery procedures in order to identify persons who might possibly have **downloaded** certain pornographic films. Such individuals, although generally able to use the Internet anonymously, are, like all Internet users, linked to particular Internet Protocol (IP) addresses, a series of numbers assigned to each Internet service subscriber. Internet service providers like Appellants can use IP addresses to identify these underlying subscribers, but not necessarily the individuals actually accessing the Internet through the subscribers' connections at any given time. Confronted with these realities, Prenda Law's general approach was to identify certain unknown persons whose IP addresses were used to download pornographic films, sue them in gigantic multi-defendant suits that minimized filing fees, discover the identities of the persons to whom these IP address were assigned by serving subpoenas on the Internet service providers to which the addresses pertained, then negotiate settlements with [*4] the underlying subscribers—a "strategy [that] was highly successful because of statutory-**copyright** damages, the pornographic subject matter, and the high cost of litigation." 2013 U.S. Dist. LEXIS 64564, at *6-7; *see also* Claire Suddath, *Prenda Law, the Porn Copyright Trolls*, Bloomberg Businessweek (May 30, 2013), http://www.businessweek.com/articles/2013-05-30/prenda-law-the-porn-**copyright**-trolls (recounting Prenda Law's history and litigation tactics). If an identified defendant sought to actually litigate, Prenda Law would simply dismiss the case. *See Ingenuity 13 LLC*, 2013 U.S. Dist. LEXIS 64564, at *6-7. As Duffy acknowledged at oral argument, of the more than one hundred cases that AF Holdings has initiated, none has proceeded to trial or resulted in any judgment in its favor other than by default. Oral Arg. Rec. 30:09-20. Nevertheless, according to one article, Prenda Law made around $15 million in a little less than three years. *See* Kashmir Hill, *How Porn Copyright Lawyer John Steel Has Made a 'Few Million Dollars' Pursuing (Sometimes Innocent) 'Porn Pirates'*, Forbes (Oct. 15, 2012), http://www.forbes.com/sites/kashmirhill/2012/10/15/how-porn-**copyright**-lawyer-john-steele-justifies-his-pursuit-

The [*5] present lawsuit is a quintessential example of Prenda Law's modus operandi. Prenda Law, AF Holdings brought suit in the United States District Court for the District of Columbia against 1,058 unnamed Does who it alleged had **illegally downloaded** and shared the pornographic film *Popular Demand* using a file-sharing service known as BitTorrent. As an attachment to its complaint, AF Holdings listed the 1,058 IP addresses assigned to those subscribers whose Internet connections had been used to share *Popular Demand*, along with the specific date and time at which it, using what it described as "sophisticated and proprietary peer-to-peer network forensic software," had observed each defendant's allegedly infringing activity. AF Holdings also attached the purported assignment [**1841] agreement through which it claims to have acquired the **copyright** to *Popular Demand*. Although it has no effect on our resolution of this appeal, other courts have since concluded that at least one of the signatures on this document was forged. *See Ingenuity 13 LLC*, 2013 U.S. Dist. LEXIS 64564, at *8; *AF Holdings LLC v. Navasca*, No. C-12-2396, 2013 U.S. Dist. LEXIS 102249, at *3-4 (N.D. Cal. July 22, 2013); [*6] *AF Holdings, LLC v. Doe(s)*, No. 12-1445, 2013 U.S. Dist. LEXIS 187458, at *10-12 (D. Minn. Nov. 6, 2013), *vacated by AF Holdings, LLC v. Doe*, No. 12-1445, 2014 U.S. Dist. LEXIS 43318 (D. Minn. Mar. 27, 2014); *see also Lightspeed Media Corp. v. Smith*, No. 12-889, 2013 U.S. Dist. LEXIS 168615, at *16 (S.D. Ill. Nov. 27, 2013) ("The[ principals of Prenda] have shown a relentless willingness to lie to the Court on paper and in person, despite being on notice that they were facing sanctions in this Court, being sanctioned by other courts, and being referred to state and federal bars, the United States Attorney in at least two districts, one state Attorney General, and the Internal Revenue Service." (internal citations omitted)).

Moving for leave to take immediate discovery, AF Holdings then sought to serve subpoenas on the five Internet service providers linked to the 1,058 IP addresses it had identified: Cox Communications, Verizon, Comcast, AT&T, and Bright House Networks. The district court granted the motion, authorizing the issuance of subpoenas compelling these providers to turn over the names, addresses, telephone numbers, and email addresses of the underlying subscribers.

The providers refused [*7] to comply. Invoking Federal Rule of Civil Procedure 45(d)(3)(A), which provides that a district court "must quash or modify a subpoena that . . . subjects a person to undue burden," they asserted that the administrative expense involved was necessarily an "undue burden" because AF Holdings had failed to establish that the court would have personal jurisdiction over the defendants or that venue would lie in this district. Supporting these contentions, Verizon asserted that its preliminary investigation revealed that only 20 of the 188 Verizon subscribers whose information AF Holdings sought resided in the District of Columbia. Comcast reported that only one of the 400 Comcast subscribers AF Holdings identified appeared to live in the District. And Cox, AT&T, and Bright House each stated that they had no subscribers at all in the District of Columbia; indeed, they do not even offer service here. The providers also argued that any burden was necessarily undue because AF Holdings had failed to provide any reason to think that **joinder** of these 1,058 defendants in one action was proper.

The district court rejected these arguments, holding that "considerations of personal jurisdiction and [*8] **joinder** are premature when discovery is sought before the plaintiff has named a defendant and the discovery is targeted to identify unknown individuals associated with the IP addresses." But acknowledging that several other district courts had reached contrary conclusions in similar situations, and recognizing that a substantial ground for difference of opinion existed, the district court certified its order for immediate appeal. *See* 28 U.S.C. § 1292(b).

The providers now reiterate the arguments they made in the district court—that the subpoenas are unduly burdensome because venue is improper, personal jurisdiction over these Doe defendants is lacking, and the defendants could not properly be joined together in one action. *HN1* Our review is for abuse of discretion. *See Recording Industry Ass'n of America, Inc. v. Verizon Internet Services*, 351 F.3d 1229, 1233, 359 U.S. App. D.C. 85 (D.C. Cir. 2003). As a "district court by definition abuses its discretion when it makes an error of law," the "abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996).

II.

We begin with personal jurisdiction, along with [*9] the closely related question of venue. Defending the district court's decision, AF Holdings contends that any consideration of such issues is premature where, as here, the as-yet-unknown defendants have yet to raise these defenses. It relies primarily on *Anger v. Revco Drug Co.*, 791 F.2d 956, 253 U.S. App. D.C. 54 (D.C. Cir. 1986), in which we reiterated the general rule that "personal jurisdiction is a matter to be raised by motion or responsive pleading." *Id.* at 958.

In *Anger*, however, we faced a situation very different from the one we confront here. There, we considered a district court's sua sponte *dismissal* of a complaint for lack of [**1842] personal jurisdiction. We held that such a dismissal is improper because "before the complaint has been served and a response received, the court is not positioned to determine *conclusively* whether personal jurisdiction exists." *Id.* (emphasis added). In other words, to bring an action a plaintiff has no obligation to establish personal jurisdiction until the defendant has raised that defense. *See id.*; *accord, e.g., Caribbean Broadcasting System, Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090, 331 U.S. App. D.C. 226 (D.C. Cir. 1998) (CBS) ("CBS's obligation to make some allegations relating [*10] to personal jurisdiction arose only after CCC had filed its motion to dismiss . . . .")

Different principles apply where, as here, a plaintiff seeks not just to file a complaint, but instead attempts to use the machinery of the courts to force a party to comply with its discovery demands. Rules of Civil Procedure 45 and 26 set forth the relevant considerations. Rule 45(d)(3)(A) requires a district court to "quash or modify a subpoena that . . . subjects a person to undue burden." If a subpoena compels disclosure of information that is not properly discoverable, then the burden it imposes, however slight, is necessarily undue: why require a party to produce information the requesting party has no right to obtain? The question then becomes what sort of information is properly discoverable. Where, again as here, no party has yet been specifically named as a defendant, the only potential avenue for discovery is Rule 26(d)(1), which provides for discovery "by court order." A district court's discretion to order discovery in these circumstances is, in turn, cabined by Rule 26(b)(1)'s general requirements that a discovery order be "[f]or good cause" and relate to a "matter relevant [*11] to the subject matter involved in the action." See *Food Lion v. United Food & Commercial Workers Union*, 103 F.3d 1007, 1012, 322 U.S. App. D.C. 301 (D.C. Cir. 1997) ("[N]o one would suggest that discovery should be allowed of information that has no conceivable bearing on the case." (internal quotation marks omitted)).

The limits of the federal discovery procedures are illustrated by *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978), in which the Supreme Court held that the representative plaintiffs in a class action suit could not use discovery tools to secure from the defendant the names of members of the plaintiff class. *Id.* at 353. The Court concluded that because the plaintiffs did "not seek this information for any bearing that it might have on issues in the case," but instead simply in order to provide the class members with notice of the litigation, they lacked a proper discovery purpose. *Id.* at 352. It inferred this improper motive in part from the plaintiffs' conduct in the district court, where they had offered to redefine the class to encompass only those class members to whom they could already send notice. *See id.* at 353. In a footnote, the Court emphasized—in language especially relevant [*12] here—that HN3 "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Id.* at 352 n.17.

Applying these same principles, we conclude that, HN4 as is the case when a plaintiff seeks jurisdictional discovery with respect to named defendants, a plaintiff pursuing discovery of the sort AF Holdings seeks regarding unknown defendants must "have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant[s]." *CBS*, 148 F.3d at 1090. Absent such a threshold showing, there is little reason to believe that the information sought will be "relevant to the subject matter involved in the action," as Rule 26(b)(1) requires. The identity of prospective defendants who cannot properly be sued in this district can be of little use in a lawsuit brought in this district. And again, as the Court stated in *Oppenheimer*, "when the purpose of a discovery request is to gather information for use in proceedings *other* than the pending suit, discovery properly is denied." 437 U.S. at 352 n.17 (emphasis added). Thus, in denying discovery where there is no such good [*13] faith belief, a court would not be making an impermissible "conclusive[]" determination on the merits of the personal jurisdiction question. *Anger*, 791 F.2d at 958. Instead, the court would be satisfying its Rule 26 obligation to ensure that the scope of discovery is limited to issues actually relevant to the litigation.

Here, we think it quite obvious that AF Holdings could not possibly have had a good faith belief that it could successfully sue the overwhelming majority of the 1,058 John Doe defendants in this district. AF Holdings concedes that under the District of Columbia's long-arm statute, which along with the Due Process Clause governs this question, *see GTE New Media Services Inc. v. Bellsouth* [**1843] *Corp.*, 199 F.3d 1343, 1347, 339 U.S. App. D.C. 332 (D.C. Cir. 2000), the only conceivable way that personal jurisdiction might properly be exercised over these Doe defendants is if they are residents of the District of Columbia or at least **downloaded** the copyrighted work in the District. *See* D.C. Code § 13-423(a)(3), (4) (providing for personal jurisdiction over a person "causing tortious injury in the District of Columbia"); *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 38-40 (D.D.C. 2011). But AF Holdings [*14] has made absolutely no effort to limit its suit or its discovery efforts to those defendants who might live or have **downloaded** *Popular Demand* in the District of Columbia. Instead, it sought to subpoena Internet service providers that provide no service at all in the District. As Duffy reluctantly conceded at oral argument, AF Holdings could have no legitimate reason for objecting to the court's quashing the subpoenas directed at these providers. Oral Arg. Rec. 33:00-04. Even for those providers that *do* serve the District of Columbia, AF Holdings's discovery demands were overbroad because it made no attempt to limit its inquiry to those subscribers who might actually be located in the District. It could have easily done so using what are known as geolocation services, which enable anyone to estimate the location of Internet users based on their IP addresses. Such services cost very little or are even free. *See* Amicus Br. of **Electronic** Frontier Foundation, et al. 24 (observing that "Neustar IP Intelligence . . . provides on-demand geolocation services for $8 per 1,000 addresses); *see also* http://freegeoip.net (last visited May 22, 2014) (providing this service for free). While perhaps [*15] not precise enough to identify an Internet user's street address, these services "can be accurate," as Duffy acknowledged at oral argument, Oral Arg. Rec. 23:58-24:01—certainly sufficiently accurate to provide at least some basis for determining whether a particular subscriber might live in the District of Columbia rather than, say, Oregon, *see Nu Image*, 799 F. Supp. 2d at 41 ("while these geolocation services are not 100% accurate, these services can place a user no farther away than a city that borders the user's actual location"). Given AF Holdings's failure to take even these minimal steps, we cannot escape the conclusion that it sought the vast majority of this information for reasons **unrelated** to its pursuit of this particular lawsuit. *See Oppenheimer*, 437 U.S. at 352 n.17 ("[w]hen a . . . request ranges . . .

Different principles apply <sup>HN2</sup> where, as here, a plaintiff seeks not just to file a complaint, but instead attempts to use the machinery of the courts to force a party to comply with its discovery demands. Federal Rules of Civil Procedure 45 and 26 set forth the relevant considerations. Rule 45(d)(3)(A) requires a district court to "quash or modify a subpoena that . . . subjects a person to undue burden." If a subpoena compels disclosure of information that is not properly discoverable, then the burden it imposes, however slight, is necessarily undue: why require a party to produce information the requesting party has no right to obtain? The question then becomes what sort of information is properly discoverable. Where, again as here, no party has yet been specifically named as a defendant, the only potential avenue for discovery is Rule 26(d)(1), which provides for discovery "by court order." A district court's discretion to order discovery in these circumstances is, in turn, cabined by Rule 26(b)(1)'s general requirements that a discovery order be "[f]or good cause" and relate to a "matter relevant [*11] to the subject matter involved in the action." *See Food Lion v. United Food & Commercial Workers Union*, 103 F.3d 1007, 1012, 322 U.S. App. D.C. 301 (D.C. Cir. 1997) ("[N]o one would suggest that discovery should be allowed of information that has no conceivable bearing on the case." (internal quotation marks omitted)).

The limits of the federal discovery procedures are illustrated by *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978), in which the Supreme Court held that the representative plaintiffs in a class action suit could not use discovery tools to secure from the defendant the names of members of the plaintiff class. *Id.* at 353. The Court concluded that because the plaintiffs did "not seek this information for any bearing that it might have on issues in the case," but instead simply in order to provide the class members with notice of the litigation, they lacked a proper discovery purpose. *Id.* at 352. It inferred this improper motive in part from the plaintiffs' conduct in the district court, where they had offered to redefine the class to encompass only those class members to whom they could already send notice. *See id.* at 353. In a footnote, the Court emphasized—in language especially relevant [*12] here—that <sup>HN3</sup> "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Id.* at 352 n.17.

Applying these same principles, we conclude that, <sup>HN4</sup> as is the case when a plaintiff seeks jurisdictional discovery with respect to named defendants, a plaintiff pursuing discovery of the sort AF Holdings seeks regarding unknown defendants must "have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant[s]." *CBS*, 148 F.3d at 1090. Absent such a threshold showing, there is little reason to believe that the information sought will be "relevant to the subject matter involved in the action," as Rule 26(b)(1) requires. The identity of prospective defendants who cannot properly be sued in this district can be of little use in a lawsuit brought in this district. And again, as the Court stated in *Oppenheimer*, "when the purpose of a discovery request is to gather information for use in proceedings *other* than the pending suit, discovery properly is denied." 437 U.S. at 352 n.17 (emphasis added). Thus, in denying discovery where there is no such good [*13] faith belief, a court would not be making an impermissible "conclusive[]" determination on the merits of the personal jurisdiction question. *Anger*, 791 F.2d at 958. Instead, the court would be satisfying its Rule 26 obligation to ensure that the scope of discovery is limited to issues actually relevant to the litigation.

Here, we think it quite obvious that AF Holdings could not possibly have had a good faith belief that it could successfully sue the overwhelming majority of the 1,058 John Doe defendants in this district. AF Holdings concedes that under the District of Columbia's long-arm statute, which along with the Due Process Clause governs this question, *see GTE New Media Services Inc. v. Bellsouth* [**1843] *Corp.*, 199 F.3d 1343, 1347, 339 U.S. App. D.C. 332 (D.C. Cir. 2000), the only conceivable way that personal jurisdiction might properly be exercised over these Doe defendants is if they are residents of the District of Columbia or at least **downloaded** the copyrighted work in the District. *See* D.C. Code § 13-423(a)(3), (4) (providing for personal jurisdiction over a person "causing tortious injury in the District of Columbia"); *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 38-40 (D.D.C. 2011). But AF Holdings [*14] has made absolutely no effort to limit its suit or its discovery efforts to those defendants who might live or have **downloaded** *Popular Demand* in the District of Columbia. Instead, it sought to subpoena Internet service providers that provide no service at all in the District. As Duffy reluctantly conceded at oral argument, AF Holdings could have no legitimate reason for objecting to the court's quashing the subpoenas directed at these providers. Oral Arg. Rec. 33:00-04. Even for those providers that *do* serve the District of Columbia, AF Holdings's discovery demands were overbroad because it made no attempt to limit its inquiry to those subscribers who might actually be located in the District. It could have easily done so using what are known as geolocation services, which enable anyone to estimate the location of Internet users based on their IP addresses. Such services cost very little or are even free. *See* Amicus Br. of **Electronic** Frontier Foundation, et al. 24 (observing that "Neustar IP Intelligence . . . provides on-demand geolocation services for $8 per 1,000 addresses); *see also* http://freegeoip.net (last visited May 22, 2014) (providing this service for free). While perhaps [*15] not precise enough to identify an Internet user's street address, these services "can be accurate," as Duffy acknowledged at oral argument, Oral Arg. Rec. 23:58-24:01—certainly sufficiently accurate to provide at least some basis for determining whether a particular subscriber might live in the District of Columbia rather than, say, Oregon, *see Nu Image*, 799 F. Supp. 2d at 41 ("while these geolocation services are not 100% accurate, these services can place a user no farther away than a city that borders the user's actual location"). Given AF Holdings's failure to take even these minimal steps, we cannot escape the conclusion that it sought the vast majority of this information for reasons **unrelated** to its pursuit of this particular lawsuit. *See Oppenheimer*, 437 U.S. at 352 n.17 ("In deciding whether a request comes within the

, identified subscribers were found to live outside the District, "the 399 likely wouldn't be named as defendants in this case." [*16] Oral Arg. Rec. 34:32-36.

The foregoing analysis applies equally to venue. *HN5* Under the relevant statute, 28 U.S.C. § 1400(a), the propriety of venue turns on whether the defendant is subject to personal jurisdiction. *See Milwaukee Concrete Studios, Ltd. v. Fjeld Manufacturing Co.*, 8 F.3d 441, 445 (7th Cir. 1993) ("section 1400(a)'s 'may be found' clause has been interpreted to mean that a defendant is amenable to personal jurisdiction in a particular forum"). AF Holdings's failure to establish any basis for thinking the latter exists means that it has likewise failed to set forth any good faith basis for the former.

AF Holdings's sole counterargument is that personal jurisdiction and venue may be waived and that these defendants, once identified, might do so. *See Anger*, 791 F.2d at 958. Such a speculative possibility is, however, plainly insufficient to satisfy AF Holdings's obligation to demonstrate a good faith belief that it will actually be able to successfully sue the more than a thousand non-District residents about whom it seeks discovery. As then-District Judge Robert Wilkins concluded in rejecting the same argument, "it defies common sense for the Court to assume that all of the [*17] nonresident John Does will waive viable lack of venue and lack of personal jurisdiction defenses—indeed, those defenses have been routinely raised in other similar file sharing lawsuits." *Nu Image*, 799 F. Supp. 2d at 42; *see also, e.g., AF Holdings LLC v. Does 1-96*, No. C-11-03335, 2011 U.S. Dist. LEXIS 134655, at *9 (N.D. Cal. 2011) (providing for discovery only after holding that plaintiff had "made a prima facie showing that its Complaint would withstand a motion to dismiss for lack of personal jurisdiction"); *Millenium TGA v. Doe*, No. 10-C-5603, 2011 U.S. Dist. LEXIS 110135, at *8 (N.D. Ill. 2011) (refusing to allow discovery where there was no plausible basis for personal jurisdiction); *cf. McLaughlin v. Bradlee*, 803 F.2d 1197, 1205, 256 U.S. App. D.C. 119 [**1844] (D.C. Cir. 1986) (upholding award of sanctions where defendants' issue preclusion defenses were sufficiently obvious to render complaint frivolous).

In sum, AF Holdings's refusal to cabin its suit and corresponding discovery requests to individuals whom it has some realistic chance of successfully suing in this district demonstrates that it has not "sought the information because of its relevance to the issues" that might actually be litigated here. [*18] *Oppenheimer*, 437 U.S. at 353. Although AF Holdings might possibly seek discovery regarding individual defendants in the judicial districts in which they are likely located, what it certainly "may not do . . . is improperly use court processes by attempting to gain information about hundreds of IP addresses located all over the country in a single action, especially when many of those addresses fall outside of the court's jurisdiction." *Pacific Century International, Ltd. v. Does 1-37*, 282 F.R.D. 189, 196 (N.D. Ill. 2012). In seeking such information, AF Holdings clearly abused the discovery process.

## III.

We turn to the question of **joinder**, which provides a separate and independent ground for reversal. As relevant here, *HN6* Federal Rule of Civil Procedure 20(a)(2) sets forth that multiple defendants may be joined in one action if the plaintiff seeks relief "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." In a multi-Doe **copyright infringement** lawsuit such as this, at least one issue of law or fact will generally be common to all defendants—here, [*19] that issue might be whether AF Holdings has a valid **copyright** in *Popular Demand*. But whether all of these Doe defendants could possibly have been a part of the same "transaction, occurrence, or series of transactions or occurrences" so as to support **joinder** is a more difficult question. If a plaintiff such as AF Holdings can claim no good faith belief that all the Doe defendants are linked in this way, then the logic for denying or at least limiting discovery is the same as that delineated above with respect to personal jurisdiction and venue: *HN7* information about individuals who could not be joined in an action cannot possibly be "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).

According to AF Holdings, **joinder** of the 1,058 John Does it named in the underlying suit was at least presumptively proper because, given the properties of the BitTorrent file-sharing protocol the defendants allegedly used to download *Popular Demand*, each defendant was necessarily part of the same transaction or series of transactions. Some background on the nature of BitTorrent is necessary to understand this argument. As Judge Harold Baer, considering a case very much like this [*20] one, explained:

> Simplified, BitTorrent and similar protocols break a large file into pieces while tagging each piece with a common identifier. Where in the normal course a user would download a file from a single source, and download it sequentially from beginning to end, with the BitTorrent peer-to-peer protocol, users join forces to simultaneously download and upload pieces of the file from and to each other. This reduces the bottleneck of Internet traffic that normally occurs at the server where the entire file is located and allows for faster download speeds for users. This interconnected web of information flowing between users, or peers, is called a swarm.

*Media Products, Inc. v. Does 1-26*, No. 12 Civ. 3719, 2012 U.S. Dist. LEXIS 125366, at *4 (S.D.N.Y. Sept. 3, 2012).

have all participated in the same series of transactions. *See, e.g., Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 244 (S.D.N.Y. 2012) (accepting a version of this argument).

Case: 1:14-cv-02165 Document #: 28 Filed: 07/22/14 Page 8 of 8 PageID #:109

We are unconvinced. For purposes of this case, we may assume that two individuals who participate in the same swarm *at the same* [*21] *time* are part of the same series of transactions within the meaning of Rule 20(a)(2). In that circumstance, the individuals might well be actively sharing a file with one another, uploading and downloading pieces of the copyrighted work from the other members of the swarm.

But AF Holdings has provided no reason to think that the Doe defendants it named in this lawsuit were ever participating in the same swarm at the same time. Instead, it has simply set forth snapshots of a precise moment in which each of these 1,058 Does allegedly shared the copyrighted work—snapshots that [**1845] span a period of nearly *five months*. Two individuals who **downloaded** the same file five months apart are exceedingly unlikely to have had any interaction with one another whatsoever. Their only relationship is that they used the same protocol to access the same work. To paraphrase an analogy offered by amicus counsel at oral argument, two BitTorrent users who download the same file months apart are like two individuals who play at the same blackjack table at different times. They may have won the same amount of money, employed the same strategy, and perhaps even played with the same dealer, but they have still engaged [*22] in entirely separate transactions. And "[s]imply committing the same type of violation in the same way does not link defendants together for the purposes of **joinder**." *Hard Drive Productions, Inc. v. Does 1-30*, No. 2:11cv345, 2011 U.S. Dist. LEXIS 119333, at *7 (E.D. Va. 2011) (internal quotation marks omitted). We therefore agree with those district courts that have concluded that ᴴᴺ⁸⁺the mere fact that two defendants accessed the same file through BitTorrent provides an insufficient basis for **joinder**. *See Malibu Media LLC*, 286 F.R.D. 113, 116 (D.D.C. 2012) ("'Nothing in the complaint negates the inference that the downloads by the various [Doe] defendants were discrete and separate acts that took place at different times.'") (quoting *Digital Sins, Inc. v. Does 1-245*, No. 11 Civ. 8170, 2012 U.S. Dist. LEXIS 69286, at *6 (S.D.N.Y. 2012)); *accord, e.g., Patrick Collins, Inc. v. Does 1-44*, No. 8:12-cv-00020, 2012 U.S. Dist. LEXIS 47686, at *18 (D. Md. Apr. 4, 2012) ("A majority of courts . . . have specifically held that the properties of BitTorrent are insufficient to support **joinder**."); *In re BitTorrent Adult Film **Copyright Infringement** Cases*, 296 F.R.D. 80, 90-91 (E.D.N.Y. 2012).

As with [*23] personal jurisdiction and venue, AF Holdings could have brought a suit for which it had some reasonable basis for believing that the requirements for **joinder** would be satisfied. But given its decision to instead name and seek discovery regarding a vast number of defendants who **downloaded** the film weeks and even months apart—defendants who could not possibly remain joined in this litigation—one can easily infer that its purpose was to attain information that was not, and could not be, relevant to this particular suit. Such use of the discovery procedures is prohibited.

## IV.

Accordingly, we vacate the district court's order and remand for further proceedings consistent with this opinion. We leave it to the district court to determine what sanctions, if any, are warranted for AF Holdings's use of a possible forgery in support of its claim.

**So ordered.**

Source: **Legal > Federal Legal - U.S. > Find Cases > US Courts of Appeals Cases, Combined** ⓘ
Terms: **joinder not allowed on unrelated cases in electronic infringement of copyright for illegally downloaded movies** (Suggest Terms for My Search | Feedback on Your Search)
View: Full
Date/Time: Tuesday, July 8, 2014 - 4:36 PM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

**LexisNexis** About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2014 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.